## THE VERONA.
## THE CHAIKA.

### D/S A/S INTERNATIONAL et al. v. McCULLY.
### No. 3461.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

Henry H. Little, of Norfolk, Va., and John W. Griffin, of New York City (Hughes, Little & Seawell, of Norfolk, Va., and Haight, Smith, Griffin & Deming, of New York City, on the brief), for appellants.

Braden Vandeventer and H. O. Stickney, both of Norfolk, Va. (Vandeventer, Eggleston & Black, of Norfolk, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from an interlocutory decree, fixing liability on appellant, entered in the District Court of the United States, for the Eastern District of Virginia, in a suit in admiralty in which the appellee was libelant.

On the night of October 7, 1931, libelant Rear Admiral U. S. N. (retired) Newton A. McCully was navigating the motor yacht Chaika (110 feet long, 15 feet beam) in Chesapeake Bay some 3 or 4 miles below Cedar Point. The Chaika was owned by Admiral McCully, and he was in command of the yacht. The admiral, accompanied by his five adopted children, ranging in ages from thirteen to twenty-three years of age, who constituted his crew, had been on a cruise to Bermuda, had returned to the United States, and, after an extended cruise, was returning to Norfolk, down the bay.

Shortly after 10 o'clock at night, the admiral, who was in charge of the Chaika, with his daughter, sixteen years old, at the wheel, saw an overtaking steamer about 1,500 yards astern of the yacht. At the time there was no fixed stern light on the Chaika, the one usually used being out of order, and Admiral McCully, who was on the stern of the yacht, was using a two-cell battery flash-light as a stern light. On seeing the steamer approaching astern, the admiral testified that he threw the switch of the flash-light and turned it on the approaching steamer and held it there for several (two or three) minutes. The overtaking vessel, the Verona, a Norwegian fruit steamer (220 feet long, 32 feet beam), was in charge of a state pilot out of Baltimore, bound down the bay. Admiral McCully, thinking that his flash-light had been seen on board the Verona and that the steamer had changed her bearings so as to clear the Chaika, put out his light and evidently, from his own statement, ceased looking in the direction of the Verona. At the time the steamer was first sighted by Admiral McCully, he estimated that she was about 1,500 yards behind the yacht, and when he put out his light he estimated that she was between eight and nine hundred yards away. The next thing noticed by the admiral, after a lapse of several minutes, was the Verona about 100 yards off, bearing down on the Chaika. He turned on his flash-light and threw it on the steamer, shouting at the same time. The steamer, almost instantly, struck the yacht, and the yacht sank in about forty-five minutes. All on board were saved. There is no evidence that anyone on board the Verona saw the Chaika until she was hit.

After hearing the evidence, partly by deposition and partly by witnesses in person, the judge below found the facts as above stated, and in addition found that the night of the accident was clear and dark, with visibility for seeing lights and objects on the water good; that the Chaika could have been seen without lights, in time to avoid the collision, had a vigilant lookout been kept on the Verona; that, while those on the Chaika were at fault in not holding the flash-light on the Verona continuously from the time it was first exhibited until the collision, this fault did not cause, or contribute to cause,

the collision, because there was no lookout forward on the Verona during that time to see a light had there been one; that there was an insufficient view forward from the bridge of the steamer; that a proper lookout was not kept on the Verona at the time of the collision; and that the flash-light used on the Chaika complied with the requirements of the law with respect to a stern light on vessels of her class. The judge then entered the decree complained of, fixing liability entirely on the appellant, the owner of the Verona.

We cannot agree with the judge below as to the absence of the light on the stern of the Chaika during the critical period not causing, or contributing to cause, the collision. It is just as logical to say that there was no need of a lookout on the stem of the Verona because there was no light to be seen on the stern of the yacht as it is to say that there was no need of a light on the stern of the yacht because there was no lookout on the stem of the steamer to see it. Had Admiral McCully kept his flash-light lighted and on the steamer all the time, there is at least a strong probability that the light would have been observed, if not from the stem of the steamer, from her bridge, before she came too close to the yacht for the light to be observed from the bridge. There was no whistle blown from the yacht to attract the attention of the steamer and no noise made other than the shouting of Admiral McCully almost at the instant of the collision. Again it is to be remembered that, so far as the evidence shows, of all the people on both the steamer and the yacht, Admiral McCully was the only person who had knowledge of the possible danger of collision between the two vessels because of their proximity. This being true, it was the duty of the admiral to be especially vigilant to avert the danger. This vigilance, from his own statement, the admiral did not exercise, as he admits that he did not notice the steamer from the time she was eight to nine hundred yards away from his yacht until she was within one hundred yards, almost immediately preceding the collision.

We feel ourselves bound by the finding of the judge below, who heard the witnesses, that there was no lookout in the bow of the Verona during the critical period. The Corapeake (C. C. A.) 55 F.(2d) 228. This was a fault on the part of the steamer, especially in view of the fact that she was, at the time, sailing a much-used channel, down the Chesapeake Bay from Baltimore to Norfolk, and an especially careful lookout should have been kept. On the other hand, we are equally clear in our opinion that the yacht was also at fault. It was a dark night, good for visibility as to light, but not good for visibility as to unlighted boats. Knowing that the steamer was overtaking his yacht, the admiral should, experienced as he unquestionably was in such matters, have kept his flash-light, even if it be admitted to be an adequate light under the statute, constantly lighted and on the steamer. Again, had he been watchful, he might have changed the course of the yacht, or blown a whistle, or rung a bell to warn the overtaking vessel. Both were undoubtedly at fault, and both were guilty of statutory faults. It has long been settled, and we know of no authority to the contrary, that in case of a collision of vessels, where both are in fault, the maritime rule is to divide the entire damage equally between them. The Sagaporack (C. C. A.) 5 F.(2d) 178; Reynolds et al. v. Vanderbilt et al., 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91.

The decree of the court below will be modified in accordance with this opinion. Damages and costs to be equally divided between the owners of the two vessels.

Modified.